BENJAMIN YOUNG *vs.* CHARLES W. CLEMENT.

Washington.    Opinion May 17, 1889.

*Trespass.    Deed.    Forfeiture.    Covenant.*

In 1870, the plaintiff sold and conveyed by deed to his grantee the exclusive right to improve the navigation of a stream of water, flowing through a timber township belonging to him, with the right to use, improve and repair the same. The deed contained an exclusive grant of the hemlock trees and bark on a large tract of land in the township, adjacent to the above waters, not to exceed a certain amount to be cut each year, and for a stipulated price payable on the first day of July of the year after the bark was peeled. The habendum was to the grantee, heirs and assigns forever, subject to all the conditions and stipulations therein contained. The grantee covenanted to cut and pay for the logs and bark as stipulated; but there was no condition in the deed that the rights in the stream and locks and canals, which the grantee might erect under the grant, should be forfeited on his failure to pay for the bark and logs as stipulated; nor that on failure to pay as stipulated the title to the logs and bark cut should be forfeited to the grantor. The grantee entered under the deed, improved the stream, constructed canals and locks, and cut the hemlock and peeled the bark, paying for the same as stipulated until July 1, 1883, when he became insolvent, and failed to pay the sum then due. The stream, canals and locks thus constructed were used for transporting bark and general merchandize in boats and scows to that time. In July 1886, the grantee conveyed to the defendant all his interest in the premises, including bark peeled prior to 1883, then on the plaintiff's land.

After this conveyance, the plaintiff gave his grantee and the defendant written notice of his claim of forfeiture of all rights under the deed by reason of the failure to comply with its condition; and forbade their entering upon the premises. He also fastened the gates of the locks. Afterwards, the defendant for the purpose of removing the bark then on the lands, entered upon the premises, removing the fastenings of the gates, and with his boats and scows, transported the bark over said stream, doing no unnecessary damage.

*Held,* that for the acts last named, an action of trespass did not lie.

*Held, also,* that the defendant owned the bark cut prior to 1883, and had a right to use the stream and the improvements upon it for the transportation of the bark.

*Held, also,* that the defendant under his deed succeeded to the rights of his grantor, and that the plaintiff had no right to close the navigation of the stream against him.

ON EXCEPTIONS, by plaintiff, to the rulings of the justice of the Calais municipal court.

This was an action of trespass, *q. c.* in which the plaintiff claimed that by a written agreement dated July 6, 1870, sealed, acknowledged and recorded, between him and F. Shaw & Bros. the latter were given the right to enter upon the land described in the writ for the purpose of cutting and peeling bark, and also to build and use on said township a canal for transporting bark, etc.; that said Shaw & Bros. forfeited their rights under the agreement, by not paying for the bark as therein agreed, and that they had not paid but became insolvent. In May 1886, the plaintiff gave written notice to said Shaw & Bros. and to the defendant, Clement, of the termination of the agreement. In July 1886, the defendant by his servants and agents broke open the lock which the plaintiff had put on the canal gate, and used the canal for transporting the bark, although forbidden by the plaintiff.

It was agreed that the men who passed through the canal were the servants of the defendant and that he was responsible for their acts; also that F. Shaw & Bros. being insolvent conveyed in July 1886, by trust deed all their property in this state to defendant Charles W. Clement, trustee, to secure a debt for money borrowed; and that he held all the title the Shaws could convey in the property in dispute.

The defendant contended that the agreement, the material portions of which appear in the opinion of the court, was an absolute conveyance forever of the canal rights named in it. The court below so ruled, and the plaintiff excepted.

*G. A. Curran*, for plaintiff.

The agreement itself makes no distinction between the right of entry for canal purposes and that for peeling bark.

The two permits follow each other and are connected by the word "also". The consideration for both permits is the same and the habendum applies alike to both, being inserted at the end of the permit to peel bark. If the permit to enter for canal purposes is a perpetual grant, regardless of the agreements and stipulations as to payment, so must be the permit to peel bark.

The plaintiff contends that the entire agreement is nothing more than a mutual contract under seal and that it should be

construed as a whole; and not as a deed of canal rights and a contract as to the other rights.

The consideration for all the grants made by plaintiff was only one, and that was payment of prices named at times stated in the agreement.

If defendant's contention is well founded, then the Shaws on the day the indenture was signed became absolute owners of the right to build and maintain a canal on plaintiff's land, and had they failed at that time, this valuable right would go to their assignee while the plaintiff would receive nothing. Such a construction of the agreement is not justified by the instrument nor by any rules indicating the intention of the parties thereto.

The consideration for the right to build and use the canal, as well as for the other rights granted, was "the agreements and stipulations herein contained," and even the habendum is "subject to all the conditions and stipulations herein contained."

*E. B. Harvey*, for defendant.

Defendant might well have demurred to this declaration. It alleges facts that prove conclusively that Sisledobsis stream is a public navigable stream. If it were otherwise, the acts complained of could not have been committed; and there is no evidence to show that the plaintiff has any right to close it with gates and locks to prevent its use for navigation.

Defendant as well as his assignors, and the public had the right to navigate it and for that purpose to go on the banks when necessary. This right attaches to all streams that are navigable for any useful purpose. *Brown* v. *Chadbourne*, 31 Maine, 9, and cases cited.

When water runs in a sufficient quantity for navigation, for any useful purpose, the public right attaches. *Com.* v. *Charlestown*, 1 Pick. 179, 185; *Com.* v. *Chapin*, 5 Pick. 199.

Defendant had the right by the grant to Shaw & Brothers to use the Sisledobsis stream and the locks built by them on it. There were three separate grants in the agreement.

First, of the right to improve and clean the bed and banks of the stream, and build dams and locks on it and straighten the course of it so as to make it navigable for boats, steamers and

scows of any size deemed by them advisable and the right to use and improve, keep up and repair, to the Shaws, their heirs, executors and assigns, with only one qualification, namely, not to injure the mill privilege on the stream, or hinder or prevent the use of it for milling purposes. This is not a condition but a restriction upon the use. *Ayling* v. *Kramer*, 133 Mass. 12; *Episcopal City Mission* v. *Appleton*, 117 Mass. 326; *Skinner* v. *Shepard*, 130 Mass. 180. The violation of this restriction would not forfeit the estate granted, the easement in the stream and its banks. But whatever was done, within the terms of the restriction, would be in excess of the grant and might be restrained by injunction or would be good ground of suit for damages. *Bagnall* v. *Davies*, 140 Mass. 76; *Crane* v. *Hyde Park*, 135 Mass. 147; *Hadley* v. *Hadley Mf'g Co.*, 4 Gray, 140.

There is not in the whole instrument a condition. It would be absurd to say that the covenant to peel and pay for bark was a condition. It was a covenant, and was the consideration for the license to peel bark and remove it and for nothing else. The failure to peel and pay for bark was not a breach of condition. It was not a failure of consideration; and if the right to peel and take bark was forfeited, it was because the permission to peel and promise to pay were concurrent, and on that ground alone; not as a breach of a condition.

The undertaking to peel and pay for certain quantities of bark was, in no sense, the consideration for the grant of the use of the stream, or the improvements made upon it.

The consideration for the right to make the excavations and erections that have been made by defendant and his assignors, the Shaws, and the right to use them, was their undertaking to make and maintain them and thereby to improve the stream, all which has been executed by making the improvements. The failure of consideration for the bark permit in no way affects this transaction of improving and navigating the stream. The grants are separate and distinct and on separate and distinct considerations; and the failure of a consideration of a grant of land (and equally of an easement in land) will not alone defeat the estate granted, especially of an executed grant. See *Laberee* v. *Carleton*, 53 Maine, 211.

The law does not favor forfeiture, and will construe a clause as a covenant and not a condition, if susceptible of such construction to save a forfeiture. *Woodruff* v. *Woodruff*, Atl. Rep., (N. J.,) vol. 16, No. 1, p. 4, and cases cited, Oct. 1888.

The Shaws were granted the right to make improvements to facilitate the navigation of this stream by building on it dams and locks. Under that grant, whatever erections they made were their property as if they had under a license built a house or a mill upon plaintiff's land; and the locks remain their property, and never became the property of plaintiff.

LIBBEY, J. By the deed of the 6th of July 1870, Benjamin Young, the plaintiff, granted to Fayette Shaw, William Shaw and Brackley Shaw, co-partners in the name of F. Shaw & Bros., certain rights in his timber township, in the following language :

"Said Benjamin Young in consideration of the agreements and stipulations hereinafter written, does hereby give, grant, bargain, sell and convey and confirm unto the said F. Shaw & Bros., party of the second part, the exclusive right to enter upon and improve and clear the bed and banks of the stream called the Sisledobsis Stream, flowing from Sisledobsis Lake into Pocumpus Lake through my lands, lying in township No. 5, in the county of Washington, and to build dams and locks upon said stream, and straighten the course thereof, so as to make said stream navigable for boats, steam-boats and scows of any size deemed advisable by said F. Shaw & Bros., and for this purpose to remove any earth, rocks or other material, and dig and excavate in and upon the bed and banks of said stream and the ground adjacent thereto, and to make canals through the same, if necessary for the purposes aforesaid. And all the said improvements, locks, canals, erections or excavations to use and improve, keep up and repair, with the right and privilege for the purposes aforesaid, to pass and repass over and upon my lands there situated whenever necessary thereto. The said Shaw & Bros., not however by any of said improvements or operations, or the use thereof, to hinder or prevent the use of the mill privilege at the outlet of Sisledobsis Lake, nor to injure the same for milling purposes."

This is followed by a grant to the Shaws of the exclusive right

to cut down and peel hemlock and take away the bark upon the plaintiff's timber lot on both sides of Sisledobsis Lake, to be cut and piled at such times and in such quantities as said Young might elect, he giving reasonable notice before the beginning of the season for peeling bark in each year; not however to exceed one million feet of logs, board measure, in any one year, the Shaws paying for said bark at the rate of fifty cents for every thousand feet of the saw logs from which the bark should be peeled. "To have and to hold all and singular the premises aforesaid to the said Fayette, William and Brackley, their heirs and assigns forever, subject to all the conditions and stipulations, herein contained."

Then follows another grant by the plaintiff to the Shaws, for the consideration aforesaid, the right to cut and haul from said lands hemlock logs, timber and bark not exceeding one million feet of saw logs in any one year, for the term of ten years at the rate of $2.00 per thousand feet for the saw logs, including the bark therefrom. And the Shaws on their part covenant to cut and peel the quantity of logs required by said agreement and to pay for the same at the rate stipulated, on the first day of July of the year after the same was peeled.

Under this deed, the Shaws entered upon the plaintiff's land, improved said stream, constructed canals and locks between said lakes, and cut from time to time the hemlock on the plaintiff's land and peeled the bark, paying for the same according to the stipulations in their contract, until July 1, 1883, when they became insolvent and failed to pay the sum then due. They had used said stream and the canals and locks they constructed for transporting their bark and general merchandize in their boats and scows to that time. In July 1886, the Shaws conveyed all their right, title and interest, in said premises including bark peeled prior to 1883, then on the plaintiff's land, to Charles W. Clement, trustee, to secure a debt for money borrowed. And it was agreed that he holds all the title that the Shaws could convey in the property in dispute.

After the conveyance to the defendant Clement in 1886, the plaintiff gave to the Shaws and to Clement notice in writing that

he claimed a forfeiture of all the rights granted to the Shaws by said deed, for failure on their part to comply with the conditions thereof, and forbade their entering upon said lands or stream or using the canal and locks; and he fastened the gates of the locks. Afterwards the defendant, for the purpose of removing the bark that had been peeled and was then upon the lands, entered upon the premises, removing the fastenings, which the plaintiff had put upon the gates, and with his boats and scows, transported his bark over said lakes and stream, doing no unnecessary damage. And for those acts the plaintiff brought this action of trespass. The court below ruled that it could not be maintained. We think the ruling was correct.

There is no condition in the deed that the rights in the stream and the locks and canals, which the Shaws might erect under the grant, should be forfeited on failure to pay for the bark or logs as stipulated, nor that on failure to pay as stipulated, the title to the logs and bark cut should be forfeited to the plaintiff. True, there was a covenant on the part of the Shaws to cut and pay for the logs and bark as stipulated. But there is no stipulation that a failure to keep that covenant should forfeit their rights to their erections upon the stream and the use of them for navigation.

We think it unquestionable that in 1886, when they conveyed to the defendant, they owned the bark which they had cut prior to 1883, and had a right to use the stream and their erections upon it for the purpose of transporting the same to their tannery, or to a market; and that by the conveyance to the defendant he succeeded to their rights, and that the plaintiff had no right to close the navigation of the stream against him. In doing what he did, the defendant was not a trespasser.

*Exceptions overruled.*

PETERS, C. J., WALTON, DANFORTH, VIRGIN and EMERY, JJ., concurred.